Good morning. May it please the Court, Mr. Peterson. I'm Bob Morris from Bellevue, South Dakota. I represent Bret Afdahl, who is the Director of the South Dakota Division of Banking. I'm here today asking this Court to overturn the decision of the District Court which denied Mr. Afdahl absolute immunity or qualified immunity. Director Afdahl is given authority under South Dakota law regarding money lending licenses. Money lending licenses, businesses that do title loans, payday loans, signature type loans, have to go through an authority to address those money lending licenses under SDCL Chapter 54-4. In 2010, Dollar Loan Center applied for a money lending license. On that application, one of the questions asked is do you do short-term loans? Short-term loans are loans that are for a period, a term of six months or less. And in that application, they marked no. Subsequently, in the yearly renewals, the application is very similar. Instead of new, it's marked renewal, and the same question is asked. Do you do short-term loans? Less than six months. The answer is no. The last two renewals were November 2016 and June 2017. The last two renewals were those dates? That's correct. When the revocation was suspended on, what is it, September 28th, what was, why was DLC allowed to service loans originating prior to November 2016 if all of their prior, if all of their applications had been no short-term loans? Well, in order to give that context to answer your question, in November of 2016, Initiative Measure 2 was voted on by the citizens of the state of South Dakota. I understand that. Right. So at the loans that Dollar Loan Center had been making up until November 2016 had been year, had been loans that were longer than six months. That was the effective date of the statute? November, November 8th is when the vote took place. As I stand here, I believe the statute was effective immediately upon the passage of the Initiated Measure. I may be standing corrected on that. But what the Initiated Measure did, South Dakota Citizens says that no money lending licensees may charge more than 36% per annum. Dollar Loan Center's loans prior to November 2016. Was it prospective then? It was prospective. They couldn't. The short answer is because the statute was prospective, the loans already in existence were not valid or void. No, they were not. They could still be serviced. Everything after the statute was. Correct. They still could be serviced because that was the contractual agreement that was valid prior to November 2016. But there could be no new one-year loan, there could be no loans originated that had more than a 36% APR. Now most of, if not all of the Dollar Loan Center's loans prior to November 2016 were loans that carried upwards of 300% annual percentage rate or greater. And that is what Initiated Measure 21 did was stop. So, effectively the existing loan product for Dollar Loan Center was illegal. They could continue to do loans, but they could not do loans if those loans were more than 36% per annum. In June of 2017, Dollar Loan Center advised the division that we have a new signature loan here and they provided the template and the division council took a look at it and says we have some concerns and then there was a discussion back and forth. Now on July 1, 2017, this new product. Let's get to pre-deprivation due process. We've all read the briefs. Okay. We haven't got much time and it's not an easy issue. What's the requirement under state law, forget the Constitution, for a summary cease and desist order, the due process requirement? The summary order can be issued under state law and within that order, the issuing authority must indicate that there's an emergency and then there is within the order and then that emergency, then they're given notice of a hearing and then the applicant or the licensee can address whether there is an emergency or is not an emergency. That process was not followed by your client here. It was not. Under state law. That's the state law. That doesn't govern due process. Correct. In this case, our position is under the 14th, the due process under the 14th Amendment, the courts have never said that you have to have a pre-revocation hearing every time. In this case, our position is that it was necessary for the director to take quick action to address the issues that were going on in this case. But didn't he backtrack? Didn't your client backtrack within days, a couple of weeks, and pulled back on that, what you're calling now, quick action to revoke? I don't know if I call it backtrack. What he did was issue a limited stay and under that limited stay, the cease and desist still continued. And that cease and desist said you did not apply, your license does include short-term loans. Let's cut to quick. Under the stay, there was no new product that the Dollar Loan Center could issue, right? They were all precluded by the statute. Correct, because their new product was a short-term loan and they were not licensed for short-term loans. Excuse me, I got a cold. The stay addressed only the quote revocation. Correct. And that revocation was stayed so that there was no question that they could continue to service those loans that had originated before 2016. I guess your client then caught up to the cease and desist due process by noticing, by offering to hear it in the stay order, but didn't declare an emergency or did? Well, he didn't use the word emergency, but the unique... He cited the statute that you referred to? He did not. Okay, so it was make it up as you go. No, it's not make it up as you go, your honor. But the unique thing about this is that he acts in a quasi-judicial capacity. And when the new loan product came forward, there was an investigation. There was exchange between counsel for Dollar Loan Center. There was exchange of information on the product. There was a target examination in July, but at that time there had only been, I think July 1st, within a week there had been 27 loans. Then so they did a second target examination in August. Over a 45-day period, 633 loans, short-term loans had been issued by Dollar Loan Center. And when... Okay, let's talk about case law. What federal due process case says that the flexible pre-deprivation requirement can be satisfied by that sort of investigation and back and forth? Well, it's not that investigation that back and forth. In this case, he... All kinds of notice and all kinds of opportunity to respond. Why don't you cite federal cases saying that that kind of, even if it's informal, that counts in the due process, the pre-deprivation equation? Because we, in going through this process, rely upon the quick action exception to a pre-revocation. So if you don't meet that, you lose? No, I don't think if we don't meet that, we lose. We still have the qualified immunity and we still have the absolute immunity. Hold on. When has the Supreme Court ever talked about a quick action exception? Pardon me? When has the U.S. Supreme Court ever talked about, in its multitudinous procedural due process decisions, ever talked about a quick action exception? Well, the U.S. Supreme Court in the, I call it HODL Virginia Surface Mining, indicated that there are circumstances where the due process or the actual hearing, pre-revocation hearing, is not necessary if it is in interest of the public health, welfare, and safety of the citizens and the person who is engaging in that quick action has the authority to do so. And in this case, the IM-21. I didn't hear the words quick action exception in your summary of that case, which I haven't read. What's the name of the case again? It's, I don't have the exact site. It's HODL Virginia Surface Mining, Your Honor. Is it cited in your brief? It is. I don't see it here. I believe it is. Okay, I'm a little bit confused. You're making some claim that there's a public safety, public interest exception for the due process requirements. You're asking for absolute immunity or qualified immunity based on a theory of quasi-judicial action. And I keep looking at this thing and so far you haven't told me as to what the perceived lawful basis was for your client to act using this process, okay? And so what I'm trying to figure out, I mean, merely because you're acting in a quasi-judicial manner doesn't afford you, like, free reign to just ignore all judicial processes, right? I mean, you still have to have some sort of lawful framework that you're operating under. And I'm just saying, what was his perceived lawful basis for acting in the manner and using the process that he did? The lawful basis was his authority under Chapter 54-4, which allowed him, one, he's in charge of licensing. Two, he's in charge of investigation. He's given power to do cease and desist orders. And he's given power to do revocations. Now, in this case, he did findings of fact, conclusions of law. And in those findings of fact and conclusions of law, he expressed the findings concerning the lack of short-term licensing under the application, that there was subterfuge to avoid the 36 percent cap, and that when the loans were such, when a late fee was anticipated under Regulation Z, the APR was greater than 400 percent. So that- I get all that. You know, see, the facts I think we're well familiar with, because they're laid out in your brief. I think the real issue, at least that I'm struggling with, is the idea that, you know, I can see where there's a public necessity or safety requirement to issue the cease and desist order. Stop doing what you're doing. Stand in place. Don't issue anything more. Don't collect any more fees or interest until we have a chance to act. I'm having a more difficult time finding some basis for issuing a pre-notice revocation of a license. And so under what kind of legal theory was Mr. Aftal proceeding to do that? Well, he proceeded to do that because of, maybe I've mislabeled this quick action. When, under a procedural due process claim, the question is, what processes do? And by labeling it quick action, what, in terms of the whole rule and other cases, is there's quick action that is necessary to protect the public health and welfare. And you can do that under the applicable law, so long as you have an adequate post-revocation process that's available. I don't think that's accurate. What Supreme Court case says you can, you don't have to have any pre-deprivation notice and opportunity to respond whatsoever? Well, I believe the Holder case and other cases that address the quick, the quick action. The one I can't find in your table of authorities? Why doesn't the, why doesn't the cease and, cease and desist order procedure provide you that safety that you're concerned about with quick action? Well, it, it may have, and this is what, this is the, the cease and desist, the cease and desist had to do with short-term loans. When they did the revocation, that was to stop everything, and then the stay was put into place. Now, the process, and, and the district court judge in, in the, in the absolute immunity analysis, I find this interesting, is that the district court judge says when we were asserting absolute immunity because of the quasi-judicial functionality, it was essentially acting like a judge. The court said when the director did the cease and desist, if he had stopped there, then we probably wouldn't be having a problem. He'd probably be entitled to absolute immunity, but the district court said as he went one step too far, and that was the revocation. Well, the absolute immunity should apply, and there should be, in my view, there is no bright line, and in terms of if he had absolute immunity to do the cease and desist, then if he made the mistake or otherwise on a revocation, the absolute immunity should also apply. You, you've said that he is entitled to, that it's a quasi-judicial capacity that, that he sits in, and I didn't really get a good description of that from the briefing, because what you've described is not only a decision-making, the revocation, but also an investigative role, a licensing role, cease and desist, revocation. How did, do all of those responsibilities fall within the title of quasi-judicial, a judge? Traditionally, a judicial capacity would not involve the investigation, for example. And he was not involved in the investigation. He had bank examiners and counsel, and they put, they put all the information together, and then he's presented with that information, and he goes through it, and through that process, makes the findings of fact and conclusions of law. He is not involved in the investigation. Contrary to, like, in the case, we both, both parties cite to Freeman 1 and Freeman 2. Freeman 1, the analysis was whether Secretary of Health is, is that individual was engaging in, like, an investigatory or prosecutorial function. The function that was in the findings of fact and conclusions of law was as the, as, functionally as a judge. And I see that I passed my reserved time. I, if I may reserve the rest of my time on rebuttal. Mr. Peterson. May it please the Court, Mr. Morris. I'm here today on behalf of Dollar Loan Center of South Dakota, LLC. This case concerns a clear violation of Dollar Loan's right to procedural due process. On September 13, 2000... I assume in preparing for this argument, you came across our 2016 decision in Keith versus Adams. I'm not familiar with that, Your Honor. Well, then you can't answer my question. How in the world can the district court's decision be squared with either my opinion that said there was no procedural due process violation, or Judge Kelly's concurrence that said there was qualified immunity because the procedural due process intricacies were not clearly established. Neither of which is consistent, in my view, with the district court's decision. But you're not prepared, so... Your Honor, I guess... You're familiar with Cleburne, I assume. Yes. Well, Cleburne doesn't specify, Cleburne clearly rejected the notion that you have to have a hearing and you have to have a lawyer and you have to have witnesses and so forth, pre-deprivation. It's a flexible standard. Well, and I guess my response to that, Your Honor, would be that in this case, we didn't even know the nature of the allegations fully. What we understood was that they were questioning our loan product. There was never any mention of this issue with a short-term lending license issue. That never came to our attention until we received the revocation order. So I guess my point would be the notion that we were provided with... The other thing Keith says is if the post-deprivation procedures demonstrate that the action was well taken, the pre-deprivation shortcomings may be non-actionable. And that would mean that this whole issue is premature because you're still litigating the post-deprivation procedures in state court, right? We are. Actually, the South Dakota Supreme Court... I mean, I understand the qualified immunity. That's appealed all the time, whether it should be or not. But I don't understand from your perspective why this doesn't play out in state court. You don't have to satisfy Cleburne to prevail in state court. And my response to that, Your Honor, would be that the reason we're not in state court is that this revocation had such reverberations on our business that there's no remedy that we can... Wait, wait, okay. Let's spell those out. Beyond the 15 days? Yes, Your Honor. Not if you win what's pending in state court. Well, that's not the case. This is injury to reputation. You want trouble? You want punitive damages for? The public at large was advised that our loans were void and uncollectible. And immediately, the reverberations around this... That may have been true. It may be true. It's still being litigated. I agree with that. It is still being litigated in the sense that we have not had the hearing that we should have had in the first place. We have never had a hearing through the state Administrative Procedures Act. Your Honor, I think the issue here is that you have the Director of the Division of Banking essentially ignoring the entire scheme for revoking a license and fast-forwarding to revocation without proper notice or a hearing. And there are a number of measures built into South Dakota law that are designed to ensure that a licensee is given notice and hearing before revocation can occur. They are virtually irrelevant to the federal procedural due process issue. As a practical matter, there has to be adequate notice and an opportunity to respond. Maybe a hearing depending on the circumstances, but it's... Give me an Eighth Circuit or U.S. Supreme Court case where pre-deprivation process that was contentious or questionable was not afforded qualified immunity under the recent Supreme Court clearly established cases. I don't know of any. Freeburn is 30 years old and has absolutely no analysis of the Supreme Court's clearly established jurisprudence in the last 10 years. Well, that may be the case, but I think it also clearly states that we're entitled to a hearing and notice before a revocation. And in fact... What establishes that? We have a protected property interest in our business license. And before that can be revoked, we're entitled to notice of the allegations against us and a proceeding to vindicate those right to... We're entitled to a pre-deprivation hearing is what I'm trying to say. Supreme Court, U.S. Supreme Court case you're relying on for that? I mean, it sounds like a good statement in South Dakota law. Bell versus... I think it's Bell versus Burson is the one that has to do with the licensee's right to pre-deprivation process. Your Honor, and I understand your position on the requirements of state law. But I think the significance as it relates to the issues before the court goes to the absolute immunity analysis. And that's where the Freeman versus Blair discussion comes in about, essentially, the executive officer skewing all the responsibilities of his office and proceeding with, in that case, a summary suspension. Well, here it was a summary revocation, something that's not even authorized by law. And it was done without providing notice or a hearing. This was not something that was closely related to the justifying purposes of absolute immunity. It's not merely a case of an executive branch officer exercising discretion. This was an executive branch officer that went rogue. And I think the district court got it exactly right on page 20 of his decision. Granting absolute immunity under circumstances where, as here, an agency official ignores or exceeds his authority. I've got to interrupt because now I'm looking at your table of authorities and I don't see Bell v. Burson. May I consult my brief? Well, you can send in a 28. You think it's in the brief but not in the table of authorities? That's very helpful for us. And I may be thinking of the citation to that case in Freeman versus Blair. But I know that there was a, in Freeman, there was a notation to that case as for the proposition that licensees are entitled to a pre-deprivation hearing. Yeah. The word Bell does not appear in your brief. Okay. Harris is cited in Freeman too. There's no citation to a Bell case. Okay. All right. All right. Well, and I, to conclude on absolute immunity, I think what the Supreme Court has said is that absolute immunity is appropriate when an official's functions are similar to those involved in the judicial process. I think that your opponent has tried to argue that, in fact, this was an adjudicative decision and not an investigative or administrative call. I'm basically saying they added bank examiners and investigators and such. Why is he wrong on that? Well, because this is nothing like an adjudicative decision-making process. This was, Director Aftal took a report prepared by his employees and used its contents to prepare a revocation order. There's no hearing there. I understand there was correspondence back and forth. But at no point during the series of that correspondence was Dollar Loan advised of the precise nature of the allegations against it. We get a letter in early July or, excuse me, the end of June, somewhere in that time frame, that basically says, you know, we might have some issues with this under our new law. Now, of course, what's neglected, what we haven't talked about today is the fact that in the 2017 legislative session, they also added a provision that said, you know, you can charge late fees without running afoul of this provision on subterfuge and essentially creating a large interest figure on these loans. So there's a statute that authorized what Dollar Loan was trying to do. Now, in the months that followed from July and August, we had the two investigations done at Dollar Loan Center's operations. At no point during those investigations was Dollar Loan advised, hey, we think, you know, this loan product is exceeding the 36% cap. At no point during those proceedings was Dollar Loan advised, hey, you guys aren't, you guys are offering short-term loans. And where's the evidence from, where's the record evidence of what you just said? The affidavit of Beaufitz. But, and you, what you're describing is a failure to follow procedures, correct? Because that standing alone can't, can't strip someone or an entity of quasi-judicial immunity, right? I don't think what I'm describing is a failure to follow procedures. I think what I'm describing is a lack of notice. Um, you know, and there is a provision under South Dakota law that requires Mr. Aftal to specifically advise us how we're violating the law and, and why we're subject to revocation. Well, I'm struggling with the difference between, um, just failing to do it properly, which wouldn't strip someone of absolute immunity, and acting completely outside of the authority. Are you, are you relying on the latter? That Aftal acted completely outside of his quasi-judicial authority? That's correct. All right. So you're conceding that if he had been merely in error, uh, that he would be clothed with immunity. I, I don't know that that's correct because I think that there's, there's been a muddling of the concepts of judicial immunity and quasi-judicial immunity. And I, I think the cases that have been cited by Mr. Aftal tend to go to the, the former. And I, I don't know that, I, I think there's a difference here and you have to look at the function that the officer is performing. And here, the function that was performed by Mr. Aftal bore no semblance to a, a judicial proceeding. I mean, it was a, it was a situation where he basically relied on his employee to go out and do the investigation and he took that information, put it into a revocation order, and we were out of business. What is your understanding of his authority, generally speaking, with all of this? The opposing counsel listed licensings, licensing, investigations, cease and desist orders, revocations. What is your understanding of Aftal's, um, authority? Well, make no mistake. I understand what South Dakota statutes say. I mean, I understand that they say that when he's looking at the revocation of a license, that's to be quasi-judicial. However, when you look at what actually happened here, that's not quasi-judicial. And that's the argument we're making is that this is not someone acting in a quasi-judicial fashion, fashion. So you are saying that Aftal, in his position, is entitled to quasi-judicial absolute immunity, except here he stepped out of that completely. But otherwise, he would get it in this process. I don't know. That's entirely hypothetical, given what we have here. But I don't know that he would be entitled to it without following the requirements of law. Well, isn't that contrary to the whole concept of judicial immunity? If he followed the law and followed all the rules, he would have no need for immunity, right? I mean, because then the answer would be, well, you got to appeal through the ordinary administrative practice and then appeal through the court system. And you'd be in South Dakota fighting about the process there, right? I mean, we would not be concerned about judicial immunity in those circumstances, right? And so there's got to be some moment where there's a difference between merely being within the bell curve of competence and going rogue. Because I think that's what your claim really is, is you're claiming that whatever else happened, in this case, the director went rogue. I would agree with that assessment. And I think if you look at the statutory scheme and what he did here, you just can't reconcile his actions with any of those provisions. There's simply no authority to revoke absent the hearing that's required and absent the notice that's required. Now, what federal procedural due process case establishes as a matter of law that the stay issued on September 28 was not part of the pre-deprivation process? I'm not sure I understand your question. Well, if the stay, an error-correcting stay, when the issue is brought to attention with a lawsuit or in any other way, a decision maker with procedural due process obligations who has brought to his or her attention that you haven't done enough and then takes corrective action, isn't that part of the pre-deprivation process? I would say no for a couple reasons. Well, of course, I asked you for a case. Frankly, Your Honor, I don't know that there are any cases that match up well with this situation. No, no. But what we're talking about, the 14th Amendment definition of what is pre-deprivation versus what is post-deprivation due process. Because you are banking entirely on a shortage or absence of pre-deprivation process because your post-deprivation issues are still in state court. So you have to establish as a matter of law that the stay, which effectively corrected, I know you don't think it corrected the public, the reputational damage, but it corrected the lack of notice of hearing, it corrected the total stop doing business order and so forth. If that's part of pre-deprivation process, it's an entirely different case than what the district court addressed. But I think the critical thing that maybe needs to be pointed out about the stay is that it did not correct the fact that we remained revoked. You know, dollar loan could have gone to a different loan product even with the cease and desist in place. Now we're talking semantics. We're revoked, but we're allowed to continue to do business. Well, I don't think we are talking semantics. I mean, the only thing we were entitled to do was service loans that existed before November 2016. That hardly corrects an outright revocation of our lending licenses. That just. You can't get any damages. I mean, revocation is just, it's a word. You can establish, if what I understand the investigators concluded is right, which is A, there was a breach of the representation that we don't do short-term loan. And B, there were no loans originated after the passage of the new statute that were not short-term loans that complied with the statute. And therefore, stop doing business. You aren't doing anything that's lawful. And then that was corrected when it was pointed out or the defendant realized that the pre-statutory loans were not subject to that criticism and should continue to be serviced. I don't understand, other than the word revocation, which I understand why it's so anathema to your client, but it's also curable in the post-deprivation process. I don't understand the due process problem here. Well, I think the due process problem here is encapsulated just that this was sprung upon us with no notice. I mean, we had this back and forth with the division during the course of their investigation. And the next thing we know, our license was revoked. I think that's the due process problem in a nutshell. There's no difference between the revocation and a cease and desist. I know you say they didn't follow the South Dakota statute on the summary cease and desist, but that's not the federal constitutional standard. And it would take a trial to work out everything that was said back and forth and investigated back and forth from the time they began to be concerned about from the time of the announcement of the new package of loans until the order. And then the stay order. That, to me, is the pre-deprivation process. And I don't see a case that establishes that it was clearly established, particularly given the post-deprivation process that's not in place and ongoing. I don't see the clearly established violation. Well, your honor, I would just, I mean, I've got 20 seconds left and I... I'll give you... I would only point to... That's not a short answer question. No, and I mean, I would simply point to the Freeman cases again. And I understand your position on those. But those cases were fairly firm in the notion that any executive official would understand you don't just summarily suspend a business license without going through the proper channels. And we were summarily revoked. And I understand the distinction may not mean a lot, but I mean, that's not even authorized under South Dakota law. I guess those are the... For these reasons, your honor, we would request that the court affirm the district court's decision. Thank you. Mr. Morris, have some time? Yep. I see. Okay. I have a few minutes. Thank you, your honor. I want to apologize to the court. I spoke earlier about the Hodel versus surface mining and the quick action. I did not cite that in my brief. But I did cite Keating versus Nebraska Public Power District, which was this court's case in 2009. The court clearly said an exception to the general rule that pre-deprivation notice and hearing is required exists when there is a need for, quote, quick action by the state when there is a compelling or overriding state interest in a summary adjudication. And that also is recognized in where the state must ask quickly or it would be impracticable to provide pre-deprivation process. Post-deprivation process satisfies the requirements of due process. That's Gilbert v. Homer, 520 U.S. 924, 1997. So the public interest of illegal loans is what led to the decision and action by the director. And he set forth in those findings of fact and conclusions of law the basis for that. This was not an arbitrary knee-jerk reaction. The reasons for it are laid out. And I want to address just briefly on the absolute immunity. This court addressed the factors to consider in Booser v. Raymond. Director Ofdahl is doing his job and he's functioning in the quasi-judicial role as a judge. Every time that he has to make a decision on what's going, what's before him, does he need to be worried about whether he's going to be sued and liable personally for damages? That's the basis and the reasoning that we have absolute immunity. So that official can do their job. Thank you. Thank you, counsel. So interesting, unusual case. It's been thoroughly briefed in argument. We'll take it under advisement. Please call the next case, Reverend. The next case is 1823-49, Travis Raymond v. United States. Thank you.